Good morning. May it please the court, I'm James Laughlin on behalf of the appellant Maria Hernandez. With the court's permission, I'd like to reserve two minutes of my time for rebuttal. Unless the court would like me to do otherwise, I would like to start by talking about the U-Visa issue and then go into the Lorenzo issue if there's any time remaining. There shouldn't be any doubt that Ms. Hernandez was eligible for U-Visa relief in the form of a U-Visa and a waiver of inadmissibility. The government conceded below that she met all of the four prerequisites for a U-Visa and the district court agreed that she had possible grounds for getting a U-Visa because of that and despite her aggravated felony conviction. But was there anything before the immigration judge that suggested or should have alerted the immigration judge to the fact that she qualified for a U-Visa or qualified for some other visa? Are you putting that kind of burden on the immigration judge to consider every possibility and ask questions? I mean, U-Visa is something that's fairly unique, correct? And it can't be given in the context of a removal proceeding. Well, there's a couple of things there. Starting with the last thing. The immigration judge can't order it. The immigration judge has and there's a directive on this that if there's indications of U-Visa relief that could be available, they're supposed to stay the proceedings while the person seeks relief. But there was nothing before him. Right. And we're not saying that in this particular case that there was that kind of evidence, for example, like there was in Rosuelo Flores. But that's the issue. That's an entire, I believe what Your Honor is talking about is an entirely different line of authorities that talks about when facts arise in the course of an immigration hearing, that suggests, hey, there might be some relief here that's available. I have no reason to explain that and talk to you about that. We're relying on something else entirely. And that's this kind of discourse, lines of authorities most clearly reflected in Arius Ortiz, which is in no circumstances can an immigration judge or other immigration official affirmatively mislead an alien about the availability of deportation relief. Let's just assume, I'm not sure this is your best issue here, because just assume she was misled by the IJ. How did she demonstrate that she was plausibly entitled to receive a U visa when she said she wasn't going to cooperate with the prosecution? Well, Your Honor, first of all, we've pointed to four cases now that have women who under very similar circumstances have found to have plausible grounds for U visa relief. This court's decision in Cisneros Rodriguez, the two district court cases talked about in the briefs, Roswella Flores and Cervantes, and the fourth one in my Rule 28J letter, Aguilar-Moya. What Your Honor just mentioned is something that I want to talk about Roswella Flores. In that case, as you may recall, or you may know, the woman, when she was a teenager, alleged that her uncle attempted to rape her. And then after cooperating with authorities, her aunt convinced her to drop the case, and she did so, so the case just died. Several years later, she's in immigration hearing. When her case is back before a court on a 1326 prosecution, the court still finds that she had plausible grounds for U visa relief. And here, Ms. Hernandez cooperated with the authorities, and as many domestic violence victims do, said, you know, I'm afraid of him, I don't want him to be prosecuted. But he nevertheless was prosecuted, and did sustain a conviction. And in fact, in the reply brief, I pointed to a couple of decisions, one of which was quoted, I believe, in Roswella Flores, from the Administrative Appeals Office, which reviews immigration decisions. And they said, in a very factual situation, you know, the fact that this domestic violence victim, after initially cooperating with authorities, ultimately did not want to pursue a prosecution, did not make her ineligible for U visa relief. So I think that that should not be a strong factor here. But going back to the bigger questions of plausibility, those four cases, I think, should guide the court. And so certainly the observation in Cisneros-Rodriguez that 70% of U visa cases, applications are granted, which provides a reasonable baseline when you are comparing other people to that standard. And so, you know, all four of the women, or I'm sorry, three of the women in those other cases, like Ms. Hernandez, had convictions for possessing methamphetamine for sale. And in fact, Cisneros-Rodriguez had two of them. Another one of them, their drug case, was gang-related. And even in the fourth case, it was a gang-related felony. All these people had very serious criminal histories, yet they still had countervailing facts that showed they had plausible grounds for relief. All right. Counsel, Judge Gould, if I could interject. At some point in your And Garcia-Lopez? Certainly. You're referring to the Lorenzo issue, as it pertains to the appeal waiver? Lorenzo issue is one issue, but other than that, I thought Garcia-Lopez has strong language that normally those appeal waivers have to be enforced. Well, Your Honor, I think that we're not in a situation, we're well within the scope of the appeal waiver, because what the appeal said is Ms. Hernandez preserves the right to appeal the denial of her 1326D motion. Now, let's assume for a minute there wasn't an appeal or an appeal waiver. If she brought that motion and went through trial and then we were up here on appeal dealing with that motion, for all the reasons I explained in my brief, the Lorenzo issue would still be viable, because it is claims, not arguments that are forfeited or waived. So if in an appeal without a plea agreement, by bringing this motion she has sufficiently preserved the ability at this time when there's a new case out there creating this new alternative argument, she can raise it as a And in that motion, she made the overarching claim that her deportation order was fundamentally unfair. And she made certain subclaims. And one of those claims was even, because she was not deportable, is charged. Now, admittedly... It wasn't an aggravated felony. But the theory on which it was an aggravated felony was entirely different. And the one that she preserved was entirely different from the theory in Lorenzo. That's true. If I mean theory, you mean a different argument. And I think that that's, I mean, I guess it's where we parse out what the difference between a different claim is and a different argument is. My position is that certainly the overarching claim is that the deportation order was fundamentally unfair. And even a subclaim of that is that one reason it was fundamentally unfair is because she was not deported as charged. With that in mind, she can now, with the benefit of this new rule that the court adopted just a couple of months ago, can say, hey, her, she was not deportable as charged because of this reason. And the court addressing this now and the government addressing this now creates no prejudice. It's just something that, as the Supreme Court recognized in Henderson, this is what we do when cases arise, when cases are an appeal. Well, let me ask you a basic question about them. The government has argued here, and I realize you haven't had the opportunity to contest it, but the government has argued that the government has not been able to dispute that amphetamine. So it doesn't make any difference. Would you be able to dispute that with some scientific evidence? I'm not a chemist, so I have no answer to that right now. What I will say is, as I pointed out in my unsuccessful motion for reconsideration, saying that these documents shouldn't be considered at all, I will say, though, that it's not an appropriate consideration at all for this case. The government's petition for re-hearing is due on Friday in Lorenzo. And given the way they're litigating this case and others, I anticipate... Well, the issue wasn't addressed in Lorenzo. The argument wasn't made by the government for whatever reason in Lorenzo. So it specifically wasn't resolved in Lorenzo. So why can't it be raised here? And if it can be raised here, what's your response to it? Have you looked into whether you would have a response to that argument? Whether have I consulted with a chemist? No, because I don't think that that's an appropriate... For whatever stage we're at now, that's not an appropriate thing for me to do. I will say, though, that... So how should that issue be addressed? Should it be remanded to the district court in this case for an evidentiary hearing on that? No, because I think that if... If I can go back to your original question, which was that this was resolved in Lorenzo. It wasn't. If you look at that... No, I didn't say it was resolved. But it was not addressed. Because what the court said was the immigration judge said, hey, I think there's a categorical match because there's no such thing as geometric isoms of methamphetamine. And then they said, well, the government hasn't made that argument, and they haven't presented evidence on that argument, so all we have is the face of the statutes, which says that there are. So this is a situation where the government is now trying to bring in, through this case and others, attacking another precedential opinion when they are just not happy with the way they litigated that case. So they... Are you saying that they're forever bound from making that argument because they didn't make it in Lorenzo? Is that your position, that they can... Even if it's true that there is no such thing as a geometric isomer of methamphetamine, that they're forever bound from or precluded from making that argument because they didn't make it in Lorenzo? Is that your position? Not exactly that. What I will say is they have the opportunity to go put this in front of Lorenzo, see if they want to change the decision. If they don't do that, then an en banc panel of this court or the Supreme Court could review that decision. But if none of those things happen, Lorenzo is precedent on the principle, it's clearly quoted principle, that when it comes to 11378 convictions based on methamphetamine, the definition of methamphetamine is broader than the definition of methamphetamine in the federal controlled substance statute. So you're saying we can't consider that in this case, under any circumstances? I'm saying not only can't the court, I think would set a bad precedent on precedent if the court started reviewing cases like that. How does this affect the aggravated felony? Her aggravated felony? Yes, her aggravated felony. Well, I think that if Lorenzo stays the way it is, then the whole thing that I just described to you, that the 11378 meth is broader than the controlled substance meth, that applies equally to the aggravated felony definition. So there's no way to distinguish one from the other once you've acknowledged that there's over-breath and indivisibility with regard to that statute and that substance. And you can't today, I mean, let's just say you were asked, you know, to respond to the declarations that were submitted by the government, I think this is what Judge Ammon was asking about, and I'd like to make a run at this as well, whether there's some kind of scientific basis to challenge them. I mean, have you, did you look at that? I did look at the, just yesterday I looked at the two district court cases where the government has filed these declarations. As you recall, they filed them and then asked the court to take judicial notes of stuff that they filed in other cases. As of there, the people in those cases have been giving time to respond, but there has been no responses yet. And again, I assume that the government will try to do... So you're saying a remand here would be meaningless? I think that whatever should happen should happen in Lorenzo. And if Lorenzo is decided with the government trying to say, hey, here's this new evidence we didn't present, you're wrong on the science and therefore you should change your decision, if that, if the panel in Lorenzo doesn't change anything and the court on Bonk doesn't change anything, then I don't think a district judge can then overrule Lorenzo based on this evidence. I don't think a three-judge panel of the court can overrule Lorenzo based on this evidence. I think that's precedent until a higher authority says otherwise. But you would argue in Lorenzo the argument's been waived because they had the opportunity to make it and didn't make it, correct? Yes. I mean, I'm not the attorney in Lorenzo. I don't know... I mean, but that predictably would be the response. Right. And I will say the government frequently cites points of criminal defendants taking responsibility for, even in the last case, for the way they litigated a case and, you know, you have to deal with the way the cookie crumbles. And this is a situation where that kind of philosophy falls on the government. Counsel, should our decision on this appeal be stayed pending the mandate in Lorenzo? I think not, because I would hope that the court would grant relief on the Yuvis issue, which is completely separate. But if the court is not inclined to do that, although, as I explained in my prior filings, this court's authority says that a case is precedent as soon as it's published and must be followed unless and until it's overruled. With that understanding, though, I know that the court is managing its own calendar and may want to wait a little while to see what happens in Lorenzo. All right. Let's hear from the government. Good morning. May I please the court? Kyle Ryan for the United States. The defendant in this case is a four-time convicted felon. Two of her felony convictions are drug trafficking crimes. And the first drug trafficking crime formed the basis for her lawful deportation from the United States. There are no less than four ways than the court can affirm the district court's judgment in this case on the Yuvis issue. Immigration judges, as a matter of due process, are not required to advise about visas that cannot be obtained in immigration court. Even if there is a visa, that requirement was not triggered in this case because there are no facts in the record suggesting the defendant was potentially eligible for a Yuvisa. That's the Lopez Velasquez case. Even if the duty was triggered, it simply wasn't plausible in this case for two reasons. She hasn't shown sufficient evidence that she would have been helpful to law enforcement, and she hasn't shown plausibility that she would have obtained the necessary evidence to make her case more public interest. Let me talk to you about the waiver, I guess. Where in the plea agreement does it limit the kinds of arguments, I guess, that Hernandez can make on appeal? It says what she can appeal, but I don't see anything about the kinds of arguments she can make in support of that appeal. So we're talking about the appellate waiver with relation to Lorenzo, Your Honor? Yes. So the plea agreement, it's a conditional plea agreement. She's waived any and all rights to pursue appeals except for the right to seek review of the adverse determination. I believe it's in paragraph 3A. And the adverse determination from the district judge doesn't talk about the definition of methamphetamine. It doesn't talk about isomers. The defendant's motion to dismiss doesn't talk about the definition of methamphetamine or isomers. To say anything, and I think it's telling, the defendant's reply brief actually describes these new Lorenzo claims as, quote, new and different, end quote, and quote, separate and distinct grounds. They have nothing to do with the arguments that she made before the district court. But those grounds are the adverse determination, not the arguments made in her motion to dismiss. I mean, would you say she waived her right to appeal altogether if the adverse determination, which I guess the district court's order, had been based on a ground not raised in the motion to dismiss? The district court's order simply doesn't discuss anything relating to California's definition of methamphetamine or isomers. It talks about whether California's controlled substance schedules themselves are affirmed in Martinez-Lopez. And so for that reason, the defendant's waived the right to bring any other claim. She's saying essentially, well, I said it was fundamentally unfair, but if that was the standard, you could almost appeal anything in that circumstance. Excuse me. Assuming that there had been no appeal waiver, this was just a straight-out guilty plea, could she have appealed this issue after her guilty plea? Is there any other type of issue she could have appealed that wouldn't have been waived by simply pleading guilty? That's my question. Right. I think she still would have waived it for the same reasons that by pleading guilty, it wasn't preserved. And in this case, I mean, we have the plea agreement in this case. The reason that the government entered into the plea agreement was to avoid issues exactly like this. That's why we enter into these conditional plea agreements, giving the defendant the right to raise the specific issue that was raised before the district court and nothing else. But here, it seems like it goes to the drafting of the plea agreement a little bit because we just referred to adverse determination. I mean, it could have been more specific, I guess, because here the adverse determination seems to be the district court's order. At least it seems somewhat ambiguous. And if it's ambiguous, it seems then we view it more favorably to the defendant. But I guess you're saying that's not ambiguous to you because it just seems like a very broad statement in terms of the adverse. It is a broad statement, Your Honor. Absolutely. And that's true. And the courts have said that when there are these broad types of appellate waivers, those are enforceable. And the court should enforce the explicit terms of the plea agreement. And so for that reason, the defendants waived these Lorenzo claims. But even if she hasn't, two other reasons why the court can find in favor of the government. There's binding precedent already on whether Section 11378, based on meth, is an aggravated felony. Produsco-Rangel, Vega-Ortiz. There are half a dozen unpublished cases in 2018 alone finding that this is an aggravated felony. But is that subsequent to Lorenzo? They're all pre-Lorenzo, Your Honor. Pre. But Lorenzo doesn't address whether something is an aggravated felony or not. No, we have. But this is an aggravated felony based on a controlled substance. So how do you make that distinction? Lorenzo simply didn't make that finding. It's not talking about an act. It remanded on that issue. And when it's back to the Board of Immigration Appeals, it's going to be a fairly simple argument. There's binding circuit precedent on this point. Lorenzo is a three-judge panel. You can't overrule another three-judge panel on this issue. I understand that. But it just seems that the aggravated felony in Lorenzo was based on this controlled substance. And so if the controlled substance, you know, there's a defect there, wouldn't that affect the aggravated felony? Well, Your Honor, maybe I should get into the science just a little bit. Well, we can get into the science. But, you know, the defense or the district court can respond to that. I know we allowed you to supplement the record on appeal. But I guess as you get into the science, if you could also comment if you think we can base a decision on two uncontested declarations about geometric isomers of methamphetamine or whether or not the district court would be in a better position to do that. Certainly, Your Honor. The first thing I would say is this is plain air review. So there has to be an error, which we would contend there's not, and it has to be plain. And when the Ninth Circuit speaks with a uniform voice on this issue, that is not plain. It's not clear on its face. And so for that reason, the government wins on this issue. But even under the plain air standard, just talking about the science for a second, the regulations say that whether something is an isomer of something is fairly straightforward and that methamphetamine only exists in an optical isomer form. And what that means is that it's the same molecular structure, it's the same sequence of atoms, but they're mirror images of each other. And there's two types of isomers for methamphetamine. But that, interestingly, why wasn't that argument made in Lorenzo if it's so clear? I don't know why they didn't make the argument in Lorenzo, Your Honor. But Lorenzo didn't decide the issue that we're talking about here today. They specifically said that it was not, the immigration judge's decision was not supported by the record, the BIA didn't adopt it, and the government didn't make the argument there. And so that's why we're able to make the argument here. It's a different record. We have different evidence. In this case, we've shown that geometric isomers of methamphetamine do not exist, so why Well, you've shown it a little late in the game. I mean, the other side hasn't had the opportunity to even address it. Well, the defendant didn't bring it up in the first place, Your Honor. That's why the government didn't address the issue before the district court. That's why it was necessary to supplement the record on appeal. And so even though the California definition of isomers, it includes superficially geometric isomers of methamphetamine, we've shown that that's a scientific fallacy. It's illusory. And in that sense, there's really no overbreadth at all. When there's no overbreadth at all, it's impossible to be prosecuted for something that doesn't exist. So your argument would be, under Duanez-Alvarez, there's no realistic possibility that someone could ever be prosecuted because it's not a crime? Exactly. And it doesn't exist. There's no realistic probability you can be prosecuted for something that does not exist. There are some cases that have talked about how textual overbreadth are sufficient on their face, but those cases, for example, they're talking about burglary of a house or a vehicle. And the government has said, well, there are no cases where someone has been convicted of burglarizing a vehicle, so it's not realistically probable. And the court said, well, that's not how it works because it's in the statute. But this is different because we know that geometric isomers of methamphetamine do not exist scientifically, mathematically. Vehicles and geometric isomers of methamphetamine are different. A more similar example would be if the burglary statute says burglarizing a house or a floating castle. That, even though superficially you include the floating castle in the definition, that doesn't create the overbreadth that defeats the realistic probability tests.  Thank you, Your Honor. I'll give you one minute. First, one of the cases the government points to as being dispositive on the aggravated felony issue is Vega Ortiz. And I'd just like to point out that Lorenzo discussed Vega Ortiz quite a bit in its decision, which I think kind of shows that both cases are similar. That once you, and keep in mind that Lorenzo didn't reach the final aggravated felony issue only because of the court's precedent saying we can only reach the considerations expressly considered by the BIA, but we can't go on to this other issue. But that last sentence I read is a wink, wink, take a serious look as to whether or not this falls on the same reason. And the other thing I just wanted to note was that the government at times up here was kind of saying it's a scientific certainty about these geometric isomers. My interpretation of the documents it submitted, even as it was seeking judicial notice and expanding the record, was that even they acknowledge at this stage the court can't accept that as the truth of the matter asserted. At most it can accept it as just being some kind of debatable issue. So, again, I feel strongly the court... So it's a remand? If the court, if Lorenzo stays the way that it is and the court disagrees with the court, no court can overrule Lorenzo based on such new evidence, then yes, it has to be remanded to deal with that issue. Thank you. Thank you. Judge Gould, did you have any other questions? No. All right. Thank you, Mr. Laughlin, Mr. Ryan. I appreciate your oral arguments here today. The case of United States of America versus Maria Trinidad Hernandez is submitted.
judges: Gould, Murguia, Amon